**Wayne Robert FELDE, Petitioner-Appellant,**

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, Respondent-Appellee.**

No. 85–4437.

United States Court of Appeals, Fifth Circuit.

May 11, 1987.

Rehearing and Rehearing En Banc Denied June 8, 1987.

Millard C. Farmer, Atlanta, Ga., William P. Quigley, Quigley & Scheckman, New Orleans, La., for petitioner-appellant.

Wm. Guste, Jr., Atty Gen., Baton Rouge, La., Paul Carmouche, Dist. Atty., A.M. Stroud, III, Catherine Estopinal, Asst. Dist. Attys., Shreveport, La., for respondent-appellee.

Before GEE, RANDALL, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

Petitioner Wayne Robert Felde, convicted of assault and manslaughter in Mary-

---

land, murdered a policeman while at large in Louisiana after escaping from custody and was crippled by shotgun fire in the course of being reapprehended. At his capital murder trial, it was his strategy and that of counsel to seek either an acquittal on grounds of insanity (post-traumatic stress syndrome arising from combat service) or a death sentence. A jury—tearful and shaken, but faithful to its duty—returned a death sentence.[1]

The conviction was affirmed on appeal, State v. Felde, 422 So.2d 370 (La.1982); and the customary post-conviction proceedings have since gone forward.

On a former appeal of this habeas matter, we affirmed the decision of the district court on all claims for relief save the contention that Felde lacked effective assistance of counsel in the sentencing phase of the trial.[2] Finding the record incomplete, we remanded the cause to district court for resolution of the issue.

That court has now done so, concluding after an evidentiary hearing that Felde was not prejudiced by any failure of his counsel to seek a hearing on his competence to stand trial. In so holding, the court stated:

Felde will satisfy the "prejudice" prong of the Strickland v. Washington [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] test only if he demonstrates that there is a reasonable probability that but for Thomas' failure to seek a competency hearing, he would have been found incompetent to stand trial at the sentencing phase [footnote omitted]. The test of competency has long been established by the Supreme Court as whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789 [4 L.Ed.2d 824] (1960). This court believes that Felde had the ability to consult with his attorney at the sentencing phase of his trial with a reasonable and rational understanding and that he had a rational and factual understanding of the proceedings against him.

Felde's testimony and closing statement to the jury [set out in the Appendix] clearly demonstrates his full understanding of the nature of the penalty proceedings. He understood that he was asking the jurors to sentence him to death. He appealed to their intelligence in asking them to do so. He made the chilling revelation to the jury that he did not believe that he could keep himself from killing others in the future and sought the death sentence based on their sense of duty. The decision to ask for the death sentence was made by Felde long before the trial commenced. It was based on his rational and understandable decision that he would rather die than spend the rest of his life in jail as a crippled and badly injured man. Felde and his counsel decided upon the all-or-nothing strategy. Felde was enrolled as co-counsel and pursued this strategy to the end in his closing remarks to the jury.

This court does not credit the expert witnesses who testified that Felde made his decision to seek the death penalty out of a self-destructiveness brought about by his post-traumatic stress disorder. Neither of these experts were at the courthouse when the penalty phase was

1. Through its foreman, it added a statement: We, the Jury, recognize the contribution of our Viet Nam veterans and those who lost their lives in Viet Nam.

We feel that the trial of Wayne Felde has brought to the forefront those extreme stress disorders prevalent among thousands of our veterans.

We have attempted, through great emotional and mental strain, to serve and preserve the judicial branch of our government by serving on this Jury.

This trial will forever remain indelibly imprinted upon our minds, hearts, and consciences.

Through long and careful deliberation, through exposure to all evidence, we felt that Mr. Felde was aware of right and wrong when Mr. Thompkins' life was taken. However, we pledge ourselves to contribute whatever we can to best meet the needs of our veterans.

2. 795 F.2d 400 (1986).

conducted. Neither doctor was present when Felde and Thomas agreed to their all-or-nothing strategy. Despite the mental disorders diagnosed by these doctors, this court believes that Felde's decision was a rational one and not one compelled by the post-traumatic disorder. Indeed, Felde put up a strong fight for his life. He and his counsel made a thorough and well prepared attempt to avoid criminal liability altogether through the Viet Nam veteran/post-traumatic stress disorder defense. *This* is the fight Felde wanted to make. He did not want to make a sympathy defense at the sentencing phase only. Far from the choice of a suicidal incompetent, Felde showed the depth of his feelings and cognition in putting up such a defense.

The trial judge saw no evidence of abnormality during the trial. Felde was able to assist Thomas in putting on the complex insanity defense. Felde was able to assist Thomas at the trial, even remarking at the sentencing phase that the two of them had selected the jury for their intelligence. Felde was capable of taking the initiative to find an attorney to accept his strategy and to fight for him at the guilt phase. Felde does not claim that he was psychotic. He does not claim that he was incapable of understanding the proceedings at the penalty phase, and the record speaks strongly against such a finding. It is this court's firm belief that had a competency commission been convened, it would have found Felde competent to stand trial at the penalty phase. *See Maggio v. Fulford,* [462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794] *supra.*

The fact that Felde attempted suicide months after the trial does not alter this court's opinion about Felde's state of mind at the sentencing phase. This court is familiar with this attempted suicide and the political statement Felde attempted to make through it. Felde wrote to the state court judge reaffirming his decision to seek the death penalty just prior to his formal sentencing in February of 1981. (Rec. at 370). Following his trial, he filed a class action suit on behalf of the inmates at the Rapides Parish Jail where he was housed. *See* Defense Exhibit # 5. The record as a whole does not demonstrate that Felde was constitutionally incompetent at *any* time. On the contrary, Felde consulted at all times with his attorney with a rational understanding of his defense. Felde had a full and factual understanding of the proceedings against him. This is all that is required for any sanity commission to conclude that Felde was competent to stand trial. Since this court does not believe that Felde has shown by any competent and believable evidence that Thomas' failure to obtain a sanity hearing prejudiced him, there can be no violation of the "principles enunciated in *Autry* [*Autry v. McKaskle,* 727 F.2d 358 (5th Cir.1984)]." [See 795 F.2d, at 403]. .... This court finds that Felde was competent at the sentencing phase of his trial and that he made a knowing and intelligent decision to seek the death penalty.

Because this court believes that Wayne Robert Felde was competent during the sentencing phase of his first degree murder trial and because this court believes that Mr. Felde knowingly and intelligently sought the death penalty from the jury, his application for writ of *habeas corpus* is DENIED.

■ We agree with the reasoning of the trial court, and we are bound by its factual findings. Felde essentially asks us to disregard them and take our own view of the evidence presented. This we cannot do; Felde's statements quoted in the Appendix, even standing alone, would suffice to support the court's findings.

■ One other contention remains to be disposed of. On the occasion of the earlier presentation to our Court, appellate counsel also contended that trial counsel "actively sought the death penalty for Wayne Felde" and hence was ineffective because, even assuming that Felde was perfectly rational and preferred a death sentence to the prospect of serving a life sentence as a cripple, in the face of such instructions from his client" at best the attorney's duty

would be to follow ... [them] by standing silent. It is [the argument runs] utterly inappropriate for an attorney to advocate his client's death."

Thus we are asked to hold that for counsel to follow his client's instructions to seek the death penalty in preference to life imprisonment was, in the circumstances presented, ineffective assistance in and of itself. We need not decide this difficult question, however, replete as it is with thorny subissues of the limits of counsel's instrumental role and of trial tactics.[3] We need not do so because even if it be conceded, for purposes of discussion, that making such an argument renders counsel ineffective, in this case there is no reasonable probability that a different result would have ensued had counsel remained silent.

For counsel's comments were indirect and were framed, like a book with bookends, by Felde's own preceding ominous assertions that unless executed he would kill again and by his own concluding pleas and "prayer" for a sentence of death. These are set out in the Appendix. In view of these, the second prong of the *Strickland* test clearly bars relief. *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). Mr. Felde's services to and sufferings for his country may commend him to executive clemency, but his arguments for habeas relief entitle him to none.

AFFIRMED.

## APPENDIX

Felde took the stand and began to address the jury even before his attorney asked him a question, and his entire testimony is reproduced below:

BY MR. FELDE:

A. All I can say to you all is.... I would advise you to return the death penalty in this case.... Keith Oliver, I know your cousin Joe Oliver. We were cell partners for about eight (8) months.... Mr. Coker, I know one of

your good friends, too, Tommy Strange. We picked this Jury and we picked them on intelligence. I consider all of you people intelligent so I hope you will take my advice, return the death penalty. Thank you.

BY MR. THOMAS:

Q. What if.... the death penalty is not returned, Wayne, do you think you will be able to control your actions in the future? Can you guarantee them that you could control your actions if you would—(Interrupted)

A. I think other deaths will result. Yes, Mr. Thomas, I do. And that's why I suggested it, to prevent it from happening. They would be on your conscience if you can't return it. Now, I'm not trying to put you all in a bad position but you all are taking other people's lives in your hands, along with mine, so I think you should return it. I don't think no more needs to be said, Mr. Thomas. They're upset.

The state and then Thomas made their closing remarks. Thomas did not plead for Felde's life:

BY MR. THOMAS: What I am going to convey to you is not necessarily my own thoughts but more those of my client, although, in some respects, I share them....

I can't tell anyone to take someone else's life but I think if that is the case only the person whose life is to be taken has that right, and I believe that you have heard him testify a short time ago....

[A]t this point, I believe there is only one kind of help you can give him because I am not going to stand up here and tell you that you are doing him a favor by giving him life, because Angola is hell and for a crippled man, it's hell twice over, and I think that's where he is going to go, first degree murder of a Shreveport policeman....

There are a lot of thoughts going through my head right now and there's

---

**3.** If professionally permissible, and if Felde's contention were accepted, the argument would be the answer to capital defense counsel's pray-er: if made and a life sentence ensues, the argument has done no harm; if the sentence is one of death, it must be reversed.

no way.... I keep thinking.... I'm waiting for something to come in here and tell me, you know, there's some reason I should ask you to spare this man but there's not. There, honestly, is not. There's not one reason that I can think of for him to continue to experience what he has been experiencing. I cannot think of one reason.

Felde then addressed the jury in his capacity as co-counsel:

BY MR. FELDE: All I have to say is.... whether you all believed what we'd said throughout this defense or not, it is true. There are two hundred thousand other veterans suffering with it and I'm sorry you didn't believe it but, however, I do pray that you will come back with the death penalty.

I'm not coming out and threatening anybody because that's not what it is. A walking time bomb, that's what it is. Somebody else will die as a result of it if I'm not put to death, I am sure. It's happened twice in eight years. There's been ten years of proof shown to you. I don't know where it went so, please, return that. I think, as countrymen, you owe me that much. I did my part. Please do yours. Okay? Thank you. Thank you, Judge Humphries, for a fair trial.