# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2020

Lyle W. Cayce
Clerk

No. 17-10948

United States of America,

*Plaintiff—Appellee*,

*versus*

Kamau Alan Israel,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
4:17-CV-409

Before Owen, *Chief Judge*, and Dennis and Haynes, *Circuit Judges*.

Per Curiam:*

Our court previously granted a certificate of appealability (COA) to Kamau Alan Israel for the following issues: whether trial counsel was ineffective for failing to (1) investigate Israel's mental health history and competency; (2) move for a competency examination and hearing; (3) investigate and advise Israel regarding an insanity defense; and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

(4) present mitigating evidence of Israel's mental health at sentencing.  We conclude that the district court properly denied Israel's § 2255 motion.  Accordingly, we affirm.

## I

Israel is a diagnosed schizophrenic with a history of mental health issues.  He takes medication for his schizophrenia, but the medication is not always effective.  As a result, Israel occasionally has psychotic episodes during which he hallucinates both visually and audibly.

## A

In 2014, Israel walked into a bank and waited in line.  He had recently shaved his head, removing "notably long hair that was fashioned in 'dread locks,'" and "was wearing construction clothing, including a yellow reflective vest and a dust mask, which was pulled up around his chin[] but just underneath his mouth."  Once he reached the front of the line, he exposed a small handgun tucked in his waistband and commanded the teller to open the cash drawer.  When she did not comply, Israel climbed over the counter and pointed his handgun at multiple tellers, commanding them to open the drawers.  After obtaining money from all the teller drawers, he fled the bank in his vehicle.

A short pursuit ensued after Israel failed to yield to officers and fled at an extremely high rate of speed."  Israel crashed his vehicle, disabling it and breaking his wrist and ankle.  He exited the vehicle; limped toward a nearby vehicle; and pointed his handgun at the woman inside, unsuccessfully attempting to steal her vehicle.  An officer then approached Israel and ordered him to drop his gun.  Israel complied, was taken into custody, and was ultimately charged with bank robbery.  After his arrest, Israel told paramedics that he was prescribed Haladol.  They asked if he was schizophrenic. Israel "appeared surprised the paramedics knew this

medication was prescribed for schizophrenia." "After this exchange, [Israel] began referencing an alter ego named 'Damon' [who] was violent and had attempted to kill [Israel] in the past."

When detectives attempted to interview Israel shortly after the paramedics' treatment, "he stated that he could not talk in front of 'Damon' because Damon was going to kill him. He then said that the robbery was supposed to be a 'suicide by cop' that didn't work," and that "he had scheduled his funeral for the following morning at 8 a.m." Israel now "wanted to go to jail because Damon could not get in there." Israel "reported that Damon had cut his throat and wrist and had stabbed him in the past," when in actuality those wounds were self-inflicted.

**B**

At his rearraignment, Israel pleaded guilty with no plea agreement. He assured the district court that he was "of sound mind" to understand "exactly what [he was there] for [that day], that is, to plead guilty to the offense of bank robbery," and "all of [the] penalties and punishments" he was subjecting himself to by doing so. Israel confirmed that he had discussed his factual resume with trial counsel, that counsel explained "the legal meaning of everything in it," and that he read and understood everything before he signed it. He agreed that he had been "satisfied" with trial counsel as his lawyer and did not "have any complaint whatsoever with anything [trial counsel had] done or failed to do during the time" he represented Israel.

The district court engaged Israel in a colloquy on the specifics of his mental health, current medications, and the "stress" he reported experiencing; his understanding of the charges against him and the proceeding that day; his understanding of the factual resume; his wish to plead guilty; the role of the sentencing court and the Guidelines; and the possibility of a sentence including a term of imprisonment of up to 20 years,

a $250,000 fine, and a three-year term of supervised release.  When the court addressed Israel's potential sentence, Israel asked the court to clarify that the sentence would not certainly be twenty years, but rather could be a maximum of twenty years.  Satisfied with the colloquy, the court determined that Israel was "fully competent and capable of entering an informed plea, and that his plea of guilty . . . is a knowing and voluntary plea" not "result[ing] from force, threats, or promises."

Shortly after the rearraignment, Israel wrote a letter to the district court.  He identified himself as "the African American male that came to your court [two]-weeks ago on crutches to plead guilty to bank robbery."  He knew the district court was "busy" with "all the felony cases [it was] dealing with, including [his]" and that the district court would ultimately impose his sentence.  Israel clarified that he was writing the court "only as a last resort" after "exhaust[ing] all [his] other avenues," i.e., writing to the U.S. Marshals and speaking to trial counsel.  He complained that the conditions of his confinement constituted "cruel and unusual punishment" because he was being denied a transfer from the jail to a medical unit where he would receive proper medication.  He mentioned that his attorney had told him the week before why he had yet to be moved to a different facility.  He said that trial counsel and the prosecutor on his case were "both privy to [his] quandary because" trial counsel told him that the prosecutor told trial counsel Israel would be moved after he consented to a psychological evaluation.  But the prosecutor changed his mind after Israel pleaded guilty.  Israel emphasized that he had "all [his] mental faculties . . . to say this; 'I'm not crazy enough to try to play games with my federal sentencing judge!!'"  He assured the court that, though he had "psychiatric issues in [his] past," he had "never [given] anyone a doubt about [his] competency."

No. 17-10948

## C

A month later, in an interview with the probation officer who prepared his presentencing report, Israel "admitted that all the facts set forth in his Factual Résumé are true, and he is guilty of the offense." He stated that "he does not know why he decided to rob the bank," "that his actions may have been caused by his mental health condition," and that "he may have been partially motivated by a desire to commit suicide." He "reported a history of suicidal ideation and stated that he has attempted suicide on multiple occasions in the past." When asked why he robbed the bank, located in Grapevine, Texas, when he lived in Fort Worth, Texas, Israel "said he got lost on the way to his wife's home." "[U]pon advice from counsel, he declined to clarify this statement." When asked "if there were any circumstances of the offense which needed clarification or further explanation" than was in the factual resume, Israel wished to dispute "that he attempted to steal a car . . . , which is inconsistent with the evidence in this case." When the officer attempted to clarify, "upon advice of counsel, [Israel] declined to say anything else about his relevant conduct" to avoid risking the loss of an adjusted offense level for acceptance of responsibility.

The "Mental and Emotional Health" section of Israel's presentencing report noted "discrepancies regarding the nature of [Israel's] mental health conditions." It concluded with a request for a condition of supervised release "requiring a mental health evaluation," as it "would be beneficial to determine the full nature and extent of [Israel's] reported, but uncorroborated, mental health history." Israel never objected to any statement in the presentencing report addressing his mental health.

Two months later—and two weeks before sentencing—Israel sent another letter to the district court, addressed to trial counsel, discussing Israel's concerns with trial counsel "downplay[ing]" his mental illness "in

5

an effort to get [him] through this judicious process [as] expeditiously as possible, with little or no assistance." He accused counsel of not securing a psychiatric evaluation, failing to contact family members and hospitals to substantiate his history of mental illness, and "constantly patronizing" him due to his mental illness. Israel concluded that he was "presently conscious to the harsh reality that [trial counsel had] been playing on" his mental health issues by telling him that the interview room in the jail may be bugged. That made him "afraid to speak freely" and was "why [he writes trial counsel] letters, but [trial counsel] '*never*' respond[s] to them."

In response to that letter, the court commented that "[o]ften what appear to be irreconcilable differences between a defendant and appointed counsel for a defendant are nothing more than misunderstandings that can readily be resolved by frank and open discussions between the defendant and counsel. The court is optimistic that such is the case here." The court then ordered that the two meet and, if any problems remained, trial counsel would be required to file an appropriate motion on behalf of Israel. Accordingly, Israel and trial counsel met for twenty-five minutes. Trial counsel then filed a report in compliance with the court's order stating that the two had "resolved the differences between them at the outcome of the meeting." Israel sent no further communication to trial counsel or the court, and all proceeded to sentencing.

**D**

At sentencing, the district court confirmed that Israel and trial counsel had received in a timely manner and read the presentencing report and all three addenda. After addressing all objections, the district court adopted all of the factual findings of the presentencing report. The court then allowed counsel and Israel to "make whatever statement [they] would like to make on the subject of sentencing or mitigation." Trial counsel clarified aspects of

Israel's criminal history. Israel addressed his "bad" record in the 1990s. He explained that after 2003, until the robbery for which he pleaded guilty, he had not "been in any trouble," "seen [a] judge," or "spent the night in jail." Because he had "kind of been on the straight and narrow just trying to get [his] life together" "lately," he "ask[ed] for leniency." He "did not raise any issue regarding his competence at any time or any dissatisfaction with counsel."

The district court responded that "the information [it had did not] quite bear out what [Israel was] talking about." It went on to detail the robbery and Israel's "criminal history going back to age 18." The court called Israel a "dangerous person" and sentenced him to the statutory maximum sentence of 240 months in prison, departing from the Guidelines range of 151 to 188 months. The court qualified the sentence, stating "a longer sentence than that would be appropriate and necessary to adequately address the factors the [c]ourt should consider in sentencing, but" it must impose the statutory maximum. It concluded by setting supervised release conditions, including that Israel "shall participate in mental health treatment services . . . until successfully discharged, . . . [which] may include prescribed medications."

We affirmed Israel's conviction on direct appeal. Israel then filed a 28 U.S.C. § 2255 motion, asserting several ineffective assistance of counsel claims related to trial counsel's failure to investigate and present evidence of Israel's mental health issues. The district court denied Israel's motion on the merits without an evidentiary hearing. The court stated that Israel's claims were "wholly conclusory" and that his "bald assertions" were "insufficient to raise a constitutional issue." The district court further concluded that Israel could not refute his testimony at the rearraignment that

he was competent and that he did not suffer from any emotional or mental disability.

Israel sought, and the district court denied, a COA. Israel then sought a COA in this court. We appointed pro bono counsel and granted Israel a COA.

## II

On appeal, Israel argues that the district court erred in denying—without an evidentiary hearing—the ineffective assistance of counsel claims supporting his 28 U.S.C. § 2255 motion.

A defendant who seeks to argue that the district court should have held an evidentiary hearing before denying habeas relief must raise that argument in his opening brief.[1] Failure to do so forfeits the issue on appeal.[2] Israel did not raise the lack of an evidentiary hearing as an issue in his initial brief. Though Israel has forfeited his argument on appeal that an evidentiary hearing should have been held, we conclude that even were the issue preserved, habeas relief is not warranted. We review a district court's denial of an evidentiary hearing on a § 2255 motion for an abuse of discretion.[3] A district court is required to conduct an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[4] A movant must present "independent indicia of the likely merit of his allegations" to warrant an

---

[1] *United States v. Valdez*, 973 F.3d 396, 406 n.6 (5th Cir. 2020).

[2] *Id.*

[3] *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

[4] 28 U.S.C. § 2255(b).

evidentiary hearing.[5]  That is "typically in the form of one or more affidavits from reliable third parties."[6]  Conclusory allegations will not suffice.[7] "If . . . the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary."[8]

As for the underlying assertions, we review the district court's denial of ineffective assistance of counsel claims on a § 2255 motion de novo.[9] "[T]he right to counsel is the right to the *effective* assistance of counsel."[10] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[11] To establish a claim for ineffective assistance of counsel, a defendant must show both that (1) "counsel's performance was deficient" and that (2) the "deficient performance prejudiced the defense."[12]

---

[5] *Reed*, 719 F.3d at 373 (brackets omitted) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)).

[6] *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

[7] *Reed*, 719 F.3d at 373; *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

[8] *Cervantes*, 132 F.3d at 1110.

[9] *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020) ("A district court's conclusions concerning a § 2255 petitioner's claims of ineffective assistance of counsel involve mixed questions of fact and law, which we review de novo." (quoting *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002))).

[10] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

[11] *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *cf. Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task.").

[12] *Strickland*, 466 U.S. at 687.

No. 17-10948

First, establishing deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."[13]  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[14]  Second, generally, establishing prejudice requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[15]

In assessing such a prejudice claim, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."[16]  Rather, courts must look to the defendant's decision-making process, accounting for "the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments."[17]  Because a defendant must satisfy both prongs to carry his burden, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[18]

---

[13] *Id.* at 688.

[14] *Id.* at 687.

[15] *Id.* at 694.

[16] *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (alteration in original) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).

[17] *Id.* at 403 (alterations and internal quotation marks omitted) (quoting *United States v. Batamula*, 823 F.3d 237, 240 n.4 (5th Cir. 2016) (en banc)).

[18] *Strickland*, 466 U.S. at 687, 697.

10

No. 17-10948

## III

Israel does not assert that, had the district court held an evidentiary hearing, he would have presented evidence that was not in the record before the district court.  In the habeas proceedings, Israel has not provided evidence that had his trial counsel been effective, counsel could have obtained evidence from a mental health expert that Israel was incompetent when he was rearraigned or when he was sentenced.

## A

First, Israel argues that "trial counsel was ineffective for failing to investigate Israel's mental health history and competency."  To establish prejudice, Israel must "demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome.'"[19]  "This is a lower burden of proof than the preponderance standard" required for incompetence in fact.[20]  "Thus, even if [Israel] were to fail to prove his incompetency by a preponderance of the evidence, it is still possible that he raised sufficient doubt on that issue to satisfy the prejudice prong of his

---

[19] *Bouchillon v. Collins*, 907 F.2d 589, 590, 595 (5th Cir. 1990) (quoting *Strickland*, 466 U.S. at 694) (applying this standard to a claim for ineffective assistance for failure to investigate the defendant's competency prior to entering his plea); *see also United States v. Avila-Gonzalez*, 757 F. App'x 353, 357 (5th Cir. 2018) (per curiam) (for the same ineffective assistance of counsel claim under 28 U.S.C. § 2255, the defendant must "demonstrate a reasonable probability that the court would have found him incompetent.  Otherwise, there is no prejudice"); *accord Hummel v. Rosemeyer*, 564 F.3d 290, 298, 303 (3rd Cir. 2009) (holding that, in a case for ineffective assistance of counsel for stipulating that the defendant was competent to stand trial and for failing to request a court order to evaluate the defendant's competency by a psychiatrist, the defendant "must demonstrate that there is a reasonable probability he would have been found incompetent to stand trial" to prove prejudice).

[20] *Bouchillon*, 907 F.2d at 595; *accord Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241 for the rule that one "must prove incompetence by a preponderance of the evidence").

ineffective assistance of counsel claim."[21]   It is irrelevant that the case establishing the standard for this claim, *Bouchillon v. Collins*, was decided before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[22]   AEDPA did not change the relevant burdens of proof or standards of review for habeas proceedings involving *federal* convictions.[23]

Because "[n]ot all people who have a mental problem are rendered by it legally incompetent,"[24] Israel's schizophrenia diagnosis and attendant treatment did not necessarily render him legally incompetent at the time of his plea.   Indeed, a person with schizophrenia "will have periods of time when symptoms are better (maybe even much better)."   A defendant is incompetent only when "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense."[25]   Accordingly, to establish prejudice on this claim,

---

[21] *Bouchillon*, 907 F.2d at 595.

[22] Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 28 U.S.C.).

[23] *Compare* 28 U.S.C. § 2255 (1949), *with* 28 U.S.C. § 2255 (1996), *and* 28 U.S.C. § 2255 (2008) (for federal convictions, 1996 amendments adding only a one-year period of limitation (subsection f), a court-appointed counsel provision (subsection g), and a second or successive motion provision (subsection h)).   The same is not true for state convictions. *Compare* 28 U.S.C. § 2254 (1966), *with* 28 U.S.C. § 2254 (1996) (for state convictions, 1996 amendments adding standards of review for questions of law or fact (subsection d), as well as a presumption and burden of proof to overcome it for determinations of factual issues made by state courts (subsection e)).

[24] *Bouchillon*, 907 F.2d at 593.

[25] *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also* 18 U.S.C. § 4241(a) ("The court shall grant the motion [for a hearing to determine the mental competency of the defendant], or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.").

there must be a reasonable probability that, but for trial counsel's performance, Israel would have been found to lack the capacity to understand the nature and object of the proceedings against him, to consult with counsel, or to assist in preparing his defense.  While the district court explicitly found Israel to be competent, that finding is not dispositive here.[26]

Israel has not shown that there is a reasonable probability that he lacked the capacity to understand the nature and object of the proceedings against him.  In *Austin v. Davis*, the defendant claimed trial counsel was ineffective for "failing to undertake significant discovery or investigation into [his] competency."[27]  This court held that the defendant had "wholly failed" to show that trial counsel's performance prejudiced his defense because "the evidence presented both to the . . . trial court and in post-conviction proceedings strongly support[ed] the . . . trial court's determination that [he] was competent."[28]  Prior to trial, the defendant wrote a number of letters to the trial court explaining, among other things, that he did not want an attorney, would accept a death sentence, and was "fully aware of his rights

---

[26] *United States v. Flores-Martinez*, 677 F.3d 699, 706 n.4 (5th Cir. 2012) (parenthetically quoting *United States v. McKnight*, 570 F.3d 641, 648 (5th Cir. 2009) noting "this [c]ourt takes a 'hard look' at the ultimate competency finding" to support the proposition that if the federal trial court makes "an ultimate competency finding, we . . . review that factual finding for clear error" on direct appeal); *see also supra* note 23; *but cf.* 28 U.S.C. § 2254(e) (providing that in habeas proceedings from *state* convictions "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Austin v. Davis*, 876 F.3d 757, 779 (5th Cir. 2017) ("Because competency is a question of fact, we afford the state trial court the deference due under § 2254(e)(1).").

[27] *Austin*, 876 F.3d at 784.

[28] *Id.* at 785.

No. 17-10948

and was fully competent to stand before [the court] and make these decisions."[29]

> Before accepting [the defendant's] guilty plea, the . . . trial court again confirmed that [the defendant] understood the charges against him and the possible punishment. It also admonished [the defendant] that he had a right to a jury trial and asked [him] a series of questions to determine if his plea was voluntary. The court asked [the defendant] if he was of sound mind. It explained the consequences of pleading guilty. The court specifically found, based on its prior evaluation of [the defendant's] competency to stand trial at the first *Faretta* hearing as well as prior conversations with [the defendant], that [he] was "mentally competent to enter [a] plea of guilty" and that he was "doing so freely and voluntarily with full knowledge of the consequences."[30]

The defendant's letters and colloquy with the judge did "not suggest an inability to understand the proceedings or charges against him," but rather showed that the defendant "remained articulate and focused in his aim of representing himself and refusing to present a defense."[31] Further, although the defendant detailed "various psychiatric treatments, interactions with mental health professionals, and the opinions of experts hired post-conviction, nothing suggest[ed] he suffered any impairment that would bear on his competency to stand trial."[32] The same is true for Israel.

First, at the rearraignment, Israel assured the district court that he was of sound mind and understood the charges against him, his rights, his plea of

---

[29] *Id.* at 763 (brackets omitted).

[30] *Id.* at 783-84 (last alteration in original) (footnotes omitted).

[31] *Id.* at 785.

[32] *Id.* at 786.

guilty, and all of the penalties and punishments that could come with that plea.[33] Explicitly evincing this understanding, Israel asked the court to clarify that the sentence would not certainly be twenty years, but rather could be a maximum of twenty years. Before accepting Israel's guilty plea, the district court engaged in a colloquy with Israel, like the district court did with the defendant in *Austin*, to confirm Israel's assertions and determine if his plea was voluntary.[34] Satisfied, the district "court specifically found"[35] that Israel was "fully competent and capable of entering an informed plea," and that his plea was "knowing and voluntary."

Next, Israel's first letter to the court after the rearraignment further demonstrates his capacity to understand and overall competency. He identified himself as the individual who came to the court to plead guilty to bank robbery. He knew the district court would ultimately impose his sentence and clarified that he had "all [his] mental faculties" and was "not crazy enough to try to play games with [his] federal sentencing judge." Israel assured the court that while he had mental health issues in the past, he had "never [given] anyone a doubt about [his] competency."[36] Finally, Israel's request to the court for "leniency" at sentencing shows his capacity to understand the nature (sentencing) and object (Israel) of that proceeding. Israel has not presented any evidence in the habeas proceedings that, at the time he pleaded guilty or when he was sentenced, he was unable either to comprehend or to participate in the criminal proceedings.

---

[33] *Cf. id.* at 783-84.

[34] *Cf. id.* at 766.

[35] *Cf. id.* at 784.

[36] C*f. id.* at 763 (defendant explaining to the state trial court in a letter, "I am fully competent and definitely know the difference between right and wrong").

No. 17-10948

There is also not a reasonable probability that Israel lacked the capacity to consult with counsel and to assist in preparing his defense. As for the capacity to consult with counsel, the test is whether he had "sufficient present ability to consult with [trial counsel] with a reasonable degree of rational understanding."[37] First, at the rearraignment, Israel swore that he had discussed his factual resume with trial counsel and that counsel explained the legal meaning of everything in it.[38] He also agreed that he had been satisfied with trial counsel and did not have any complaint with anything trial counsel had done or failed to do while representing him.

Next, Israel's letters after the rearraignment further indicate Israel's capacity, and even willingness, to consult with counsel with a reasonable degree of rational understanding. In Israel's first letter to the court after the rearraignment, he mentioned multiple times how he had spoken to trial counsel regarding his potential transfer to a medical unit. In the second letter, addressed to trial counsel, Israel discussed his concerns with trial counsel "downplay[ing]" his mental illness and failing to contact the proper entities to document that illness. Finally, after the second letter, Israel consulted with counsel in a twenty-five-minute court-ordered meeting, at the outcome of which the two "resolved the differences between them." Israel never again raised any issue regarding his competence at any time or any dissatisfaction with counsel after that consultation.

As for the capacity to assist in preparing his defense, Israel's first letter to the court after the rearraignment—complaining about the conditions of his confinement in jail, stating that he "truly hate[d] to bother [the court]

---

[37] *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam).

[38] *Cf. Austin*, 876 F.3d at 763 ("[The defendant] stated that he was 'fully aware of [his] rights and [was] fully competent to stand before you and make these decisions.'" (alterations in original)).

about such a frivolous issue" but he was being denied a transfer to the medical unit where he would receive proper medication—evinces his capacity to assist his defense by contacting the district court. Next, Israel's second letter to the district court (addressed to trial counsel) shows Israel's capacity to assist with a defense related to his mental health issues. Israel specifically mentions two steps—securing a psychiatric evaluation and contacting family members and hospitals to document his history of mental illness—which he thought should be taken for his case. Last, at sentencing, when asked by the court if he would like to make any statement regarding mitigation, Israel had the capacity to emphasize to the court that although he had a criminal history, he had "kind of been on the straight and narrow," and ultimately "ask[ed] [the court] for leniency." Based on the rearraignment, Israel's letters, and his sentencing, there is not a reasonable probability that Israel lacked the capacity to assist in his defense.

Israel has not presented any evidence in the habeas proceedings that at the time he pleaded guilty or when he was sentenced he was unable to understand the nature or object of the proceedings, consult with counsel, or assist in preparing his defense. While Israel presents evidence pertaining to his mental health issues before and after the criminal proceedings, including treatment he received after his criminal proceedings concluded, nothing suggests any impairment that would bear on his competency during the criminal proceedings. Moreover, "to succeed on a claim for failure to investigate, a defendant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[39] Israel has not met that burden. He has not presented any evidence that trial counsel could have obtained evidence from a health care expert that

---

[39] *United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014) (quoting *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011)).

No. 17-10948

Israel was incompetent when he pleaded guilty.[40]  Therefore, Israel cannot prevail on his claim of ineffective assistance of counsel for failure to investigate his mental health and competency.

## B

Second, Israel argues trial counsel was ineffective for failing to move for a competency examination and hearing.  For the same reasons discussed above, this claim fails.  To establish prejudice, Israel must show a reasonable probability that the district court would have found Israel incompetent if trial counsel had moved for a competency examination or hearing.[41]  The district court would had to have found Israel incompetent by a preponderance of the evidence.[42]

It is unclear from the case law of this court and our sister circuits whether the standard for prejudice on an ineffective assistance claim for failure to *move for a competency hearing*, unlike such for failure to *investigate* the defendant's competency,[43] requires melding the burdens of proof for an ineffective assistance claim and incompetence in fact.[44]  That is, it is unclear

---

[40] *Cf. Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) (holding the prejudice prong satisfied when a psychologist testified that due to a clinically recognized mental disorder the defendant was incompetent to plead guilty).

[41] *See Felde v. Butler*, 817 F.2d 281, 282-83 (5th Cir. 1987); *see also Saldaño v. Davis*, 701 F. App'x 302, 315 (5th Cir. 2017) (per curiam) ("To show prejudice, Saldaño must demonstrate a reasonable probability that the trial court would have found him incompetent had counsel requested a competency hearing." (citing *Felde*, 817 F.2d at 282)).

[42] 18 U.S.C. § 4241(d).

[43] *See supra* note 19.

[44] *See United States v. Torres*, 717 F. App'x 450, 455-56 (5th Cir. 2018) (per curiam) (for claim that counsel was ineffective for failing to investigate defendant's competency and request a competency hearing, defendant "must demonstrate a reasonable probability that he was incompetent when he pleaded guilty"); *accord Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013) ("In cases where a defendant contends that he received ineffective

if Israel must show that there is a reasonable probability that he could have been found incompetent by a preponderance of the evidence at a hearing, or that, like a claim for failure to investigate, he must show that there is a reasonable probability he was incompetent.[45] Regardless, "the difference between *Strickland*'s prejudice standard and a more-probable-than-not [i.e., preponderance] standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable."[46]

There is no evidence that, had there been a competency examination or hearing, any testimony would have been elicited or other evidence would have been offered that Israel was incompetent at the time he pleaded guilty. Therefore, Israel was not prejudiced by trial counsel's performance because there is not a reasonable probability—or a reasonable probability of proof by a preponderance of the evidence—that the district court would have found Israel incompetent had trial counsel moved for such an examination or

---

assistance because his attorney failed to request a competency hearing, 'we have interpreted the [*Strickland*] prejudice inquiry as asking whether there is a reasonable probability the defendant would have been found unfit had a hearing been held.'" (alteration in original) (quoting *Burt v. Uchtman*, 422 F.3d 557, 567 (7th Cir. 2005))); *Stanley v. Cullen*, 633 F.3d 852, 862-63 (9th Cir. 2011) (quoting Third Circuit case *Jermyn v. Horn* in support of holding that counsel was not ineffective for failing to move for competency proceedings during the guilt phase of the trial when there was "insufficient evidence" of the defendant's incompetence during that phase); *Jermyn v. Horn*, 266 F.3d 257, 283 (3rd Cir. 2001) (holding that counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel if "there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered").

[45] *Compare supra* note 19 & accompanying text, *with supra* notes 41-44 & accompanying text.

[46] *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted) (quoting and citing *Strickland v. Washington*, 466 U.S. 668, 693, 697 (1984)).

hearing.    Accordingly, Israel is not entitled to relief on that ineffective assistance of counsel claim.

## C

Third, Israel argues trial counsel was ineffective for failing to investigate and advise Israel regarding an insanity defense.  The government argues that Israel waived his right to assert an insanity defense—along with any associated ineffective assistance claim—when he pleaded guilty to bank robbery.  Generally, "[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant.  This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."[47]  More specifically, the defendant must allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[48]

Israel made no such allegation in relation to this ineffective assistance claim in his opening brief.  Instead he argued that "[t]rial counsel had reason to know that [he] might have been able to plead innocent by reason of insanity" and that "such a defense might indeed have been 'promising.'"  At no point did he classify the plea as involuntary or unknowing.[49]  Israel contended in his § 2255 motion that "his guilty plea wasn't valid because he

---

[47] *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (citation omitted) (citing *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991)).

[48] *Hill v. Lockhart*, 474 U.S. 52, 54-56, 59 (1985) (defendant filing a federal habeas corpus petition alleging that his guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him as to his parole eligibility date and the Court requiring for the prejudice prong a showing that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial").

[49] *Cf. Glinsey*, 209 F.3d at 392 (defendant explicitly alleging "his plea was involuntary").

was incompetent." He argued in his reply brief that his "claims of ineffectiveness here go directly to the guilty plea, which [he] argues he only entered on these grounds because he was left without a defense." Those arguments likely go to the voluntariness of Israel's plea.[50] However, failure to brief an issue adequately on appeal can constitute forfeiture of that argument,[51] and issues raised for the first time in a reply brief are waived.[52] Thus, Israel likely waived this claim of ineffective assistance of counsel.

Nevertheless, assuming without deciding that he did not waive the claim, to demonstrate prejudice Israel must show "that there is a reasonable probability that he would have prevailed on his insanity defense had he pursued it."[53] We "must consider the totality of the evidence before the judge or jury."[54] Trial counsel's "failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had [trial counsel] raised the issue."[55] In that case, the defense suffers no prejudice.

---

[50] *See supra* note 48 & accompanying text.

[51] *Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019).

[52] *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 398 (5th Cir. 2018) (JONES, J., dissenting).

[53] *Knowles v. Mirzayance*, 556 U.S. 111, 114, 127-28 (2009) (internal quotation marks omitted) (reversing the state court's conclusion that there was no ineffective assistance of counsel under 28 U.S.C. § 2254 because the defendant did not demonstrate that he suffered prejudice from counsel recommending he withdraw his insanity defense).

[54] *Martinez v. Dretke*, 404 F.3d 878, 890 (5th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 695 (1984)) (holding, on a claim of ineffective assistance for failure to present an insanity defense, that "even if counsel had asserted the presumption and defense of insanity . . . it is highly improbable that the outcome would have been different").

[55] *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

No. 17-10948

Insanity is an affirmative defense requiring clear and convincing evidence that "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense."[56]  Israel argues that an insanity defense would have been "promising" because Israel has always been mentally ill and the evidence demonstrates that he committed the alleged crime while mentally ill.  Thus, Israel contends, he was unable to appreciate the "nature and quality or the wrongfulness of his acts" at the time of the crime.[57]  However, the record "establishes only that [Israel] may have had a *diminished capacity* to appreciate the nature and quality or wrongfulness of his actions [due to his mental health issues], not that he was *completely unable* to appreciate such things, as required by 18 U.S.C § 17."[58]

A defendant's concealment of a crime can provide evidence of his capacity.[59]  In *United States v. Eff*, the undisputed evidence showed that the defendant, a fireman with Klinefelter's syndrome convicted of arson, "had the ability to and did appreciate that his actions were wrong" when he "set the fires in secret and initially attempted to cover up his involvement by lying to investigators."[60]  The defendant's attempt to hide his commission of the crime showed that he "appreciate[d] that his conduct was wrong as an eight-

---

[56] 18 U.S.C. § 17(a).

[57] *Id.*

[58] *United States v. Eff*, 524 F.3d 712, 718 (5th Cir. 2008) (emphasis in original).

[59] *See id.* at 718-19.

[60] *Id.* at 718 (citing *United States v. Barton*, 992 F.2d 66, 69 (5th Cir. 1993) ("[A] person's attempt to hide his commission of a crime suggests that the person knows the action is wrongful or illegal . . . .")).

year-old child appreciates that stealing is wrong—they can articulate that their actions were wrong, but they will complete the act anyway."[61]

Similarly, Israel, a diagnosed schizophrenic convicted of bank robbery, attempted to cover up his involvement in the robbery by shaving his head and wearing a construction "disguise"; leading police on a high-speed chase away from the bank; and attempting to carjack a victim to continue evading the police even after he crashed the initial getaway car and was injured as a result.[62] Thus, while Israel's mental health issues may have led him to have a diminished capacity to appreciate the nature and quality or wrongfulness of his actions, he was not completely unable to appreciate such things.

Nevertheless, Israel argues that, under this court's decision in *United States v. Long*,[63] a "schizotypal personality disorder 'fits comfortably'" within the § 17 definition of insanity. Israel is incorrect for two reasons. First, we held in *Long* that an approach "that treats a particular diagnostic category as necessary or sufficient for" an insanity defense "would improperly surrender to mental health experts the ultimate responsibility of adjudicating criminal culpability and just as improperly would take that decision away from the court and jury, causing the insanity defense to again

---

[61] *Id.* at 718-19.

[62] *Accord United States v. Freeman*, 804 F.2d 1574, 1577 (11th Cir. 1986) ("The fact that immediately after the robbery was done while he was in disguise, he fled; that after a change of clothes he was accosted by a policeman from whom he ran in an attempt to avoid apprehension; that during the bank robbery he threatened to kill all of the bank employees if they reported the robbery, and his statements after his arrest—that is, immediately after his arrest—showing that he knew that he had done wrong, that he didn't know why he did it, that he badly needed money, that his family badly needed money and he was disappointed with himself, all tend to show that he knew what he did was wrong.").

[63] 562 F.3d 325 (5th Cir. 2009).

rise or fall solely on the basis of a clinical diagnosis."[64]   Second, Israel misses the critical distinction between *Eff* and *Long*.  The "bulk of the relevant testimony" in *Long* "relate[d] to the manner in which Long's disturbances of thought affected his ability to appreciate his actions," rather than focusing on being "driven by something like an irresistible impulse" as in in *Eff*.[65] That is, the defendant in *Long* attempted to prove that his illness interfered with thought, rather than with volition.[66]  He had a delusional belief that he had to commit the crimes because the voices he was hearing told him it was for the "betterment of mankind or God."[67]   In contrast to *Long* and similar to *Eff*, Israel has consistently focused on his volition, arguing "[t]here is strong evidence that he committed his crimes under schizophrenic *compulsion*."  Rather than committing the robbery for a purpose told to him by voices he was hearing, he committed the robbery as a means to escape those voices or for a reason he cannot recall.

In his briefing on appeal, Israel highlights that: he told his wife on the day he was arrested that demons were chasing him that day; he mentioned to the arresting officers that a being called "Damon" had cut him, although the

---

[64] *Long*, 562 F.3d at 332-33.

[65] *Id.* at 344.

[66] *Id.*

[67] *Id.* at 340; *see also id.* at 336 (discussing evidence that the defendant heard voices "saying that this is what you need to do" and "telling him that it was his 'job to test the system to find the weaknesses'"); *id.* at 339-40 ("[A] reasonable juror could just as well conclude, based on clear and convincing evidence, that Long did not know that his acts were wrong because of the delusional beliefs and hallucinations from which he suffered during his psychotic episodes (for example, when he sent the letters and e-mails). . . . [W]hether . . . Long's hallucinations were linked to his delusional beliefs, the very existence of the delusional belief that he had to terrorize hundreds or even thousands of persons for the 'betterment of mankind or God' is sufficient to demonstrate that his inability to appreciate the wrongfulness or the nature and quality of his actions flowed from his illness.").

No. 17-10948

wounds were self-inflicted; and he "suffers from auditory and visual hallucinations, paranoid ideations, and disassociation with reality." Unlike the defendant in *Long* who heard voices telling him to commit specific crimes,[68] neither Israel's arguments nor the evidence address a delusional belief held by Israel that he had to commit the robbery for a purpose told to him by "Damon" or other voices. Rather, Israel stated that he robbed the bank in the hope of committing "suicide by cop" or being put in jail, thus enabling him to escape "Damon." Those statements show Israel knew the nature and quality of his actions at the time of the crime because he knew that his actions would result in interaction with police officers and potential jailtime.

In Israel's § 2255 motion, he "contend[ed] that he never would have robbed that bank if he wasn't hallucinating terribly and following the commands of the voices in his head," and attached a letter from his wife claiming that on the day of his arrest he yelled that there "were demons chasing him demanding money and he had a gun and was paranoid looking out the window." In his reply brief he contended that he "consistently claimed that he has no memory of the incident—all he remembers is that he was driving to his wife's house and got lost." However, all of those assertions are "inconsistent with the bulk of [Israel's] conduct."[69] Further, he did not highlight that evidence or raise those arguments in his opening brief.[70]

The evidence in the record and the information available to trial counsel do not indicate a reasonable probability that Israel was unable to appreciate the nature and quality or wrongfulness of his actions as a result of

---

[68] *Long*, 562 F.3d at 336.

[69] *See supra* note 8 & accompanying text.

[70] *See supra* notes 51-52.

his mental health issues.  Thus, there is not a reasonable probability that an insanity defense would have been successful,[71] and Israel was not prejudiced by trial counsel's allegedly deficient performance.  Moreover, because Israel argues trial counsel was ineffective for failing to investigate and advise him regarding an insanity defense, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[72]  Israel has not presented any evidence that trial counsel could have obtained other evidence, such as that from a health care expert, that Israel was insane at the time he committed the robbery.  For both reasons, Israel cannot prevail on this ineffective assistance of counsel claim.

## D

Last, Israel argues trial counsel was ineffective for failing to present mitigating evidence of Israel's mental health at sentencing.  Israel argues that if trial counsel had introduced evidence concerning his mental health issues at sentencing, there is at least a reasonable probability that the district court would have imposed a sentence lower than the 240 months' statutory maximum sentence he received.

"[F]ailing to put on mitigating evidence at the punishment phase of the trial . . . is not per se ineffective assistance."[73]  While "*any* additional time in prison has constitutional significance" and thus can constitute prejudice,[74]

---

[71] *Cf. Bouchillon v. Collins*, 907 F.2d 589, 596-97 (5th Cir. 1990) (discussing the facts of *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987) to explain why counsel in *Bouchillon*—unlike trial counsel here—was ineffective for failing to pursue an insanity defense).

[72] *See supra* note 39 & accompanying text.

[73] *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) (citing *King v. Puckett*, 1 F.3d 280, 284 (5th Cir. 1993)).

[74] *United States v. Grammas*, 376 F.3d 433, 438-39 (5th Cir. 2004) (emphasis in original) (discussing how the Supreme Court's decision in *Glover v. United States*, 531 U.S.

No. 17-10948

Israel must provide a "specific, affirmative showing of what the [mitigating] evidence would have been" to lead to a lower sentence.[75] Israel has not identified what mitigating evidence—other than what was already before the court pre-sentencing—would have made a difference. Consequently, we "cannot determine whether [Israel] was prejudiced by the absence of such evidence at"[76] sentencing, beyond Israel's bald assertion that the sentence was higher than it would have been otherwise.[77] That assertion is not enough.[78] Thus, as is, the record conclusively shows that Israel cannot prevail on his claim that trial counsel was ineffective for failing to present mitigating evidence of Israel's mental health at sentencing.

## IV

In sum, even if Israel could show that trial counsel's performance was deficient, Israel has not presented any evidence that the allegedly deficient performance prejudiced Israel's defense. He cannot prevail on any of his four ineffective assistance of counsel claims.

\*     \*     \*

---

198 (2001) abrogated the "significantly less harsh" test for prejudice in sentencing and replaced it with the "any amount of jail time" test).

[75] *Rector*, 120 F.3d at 564.

[76] *Id.*

[77] *Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019) ("Federal Rule of Appellate Procedure 28(a)(8)(A) instructs a party to brief his 'contentions and the reasons for them, with citations to the authorities and parts of the record on which the [party] relies.'" (alteration in original)).

[78] *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (emphasizing that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding" (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases))).

No. 17-10948

For the foregoing reasons, the judgment of the district court denying Israel's § 2255 motion is AFFIRMED.

No. 17-10948

JAMES L. DENNIS, *Circuit Judge*, concurring in the judgment:

Because I agree that Israel has forfeited his argument that the district court erred in denying his claims without an evidentiary hearing, and that review of the record reveals that he cannot establish prejudice on any of his ineffective assistance of counsel claims, I concur in the judgment.